*1310 OPINION.
Love:
It has been agreed by stipulation between the parties that the dividends formally declared in 1918 were properly included as income by the petitioners in the year 1917, and that the dividends formally declared in 1919 were properly included as income in the year 1918 and did not constitute income in the year 1919. Therefore, the amount of dividends to be included in the year 1918 by the stockholders of the Aurora Brewing Co. amounted to $27,000 instead of $46,000 as determined by the Commissioner, and no dividends were received during the year 1919.
This leaves as the principal issue, which is common to all of the appeals, the effect to be given, for income-tax purposes in the cases of the petitioners who were stockholders of the Aurora Brewing Co., to a reduction of the capital stock of this corporation in 1920 and the cancellation of certain liabilities of the stockholders to the corporation. In other words, our question is as to the extent to which the stockholders, petitioners in these proceedings, are taxable in 1920 on account of this transaction. The parties have stipulated that what happened amounted to a withdrawal by the stockholders in 1920 of at least $367,553, and that this amount should be treated either as a liquidating dividend or as a withdrawal of profits, as the Board may determine. The respondent, however, contended that there was not only a distribution of $367,553, but also of an additional amount of $149,599.38, the credit balances to which claim was waived by the stockholders. With respect to the latter contention, we are of the opinion that, having due regard to the stipulation between the parties and the evidence furnished as to the reasons for adopting the resolution which authorized the purported distribution of $517,152.38, what happened in 1920 did not result in a distribution in excess of $367,553, the indebtedness of which the stockholders were relieved, *1311 and that the amount of $149,599.38 was neither actually nor constructively received by the petitioners, nor was it intended to be distributed to them. What the corporation did was to reduce its capital stock from $450,000 to $100,000 and then later take corporate action which resulted in the extinguishment of certain liabilities of the stockholders to the corporation, which liabilities had been created by the transfer of physical properties and funds received from the sale of assets to the petitioners. Whether these withdrawals were in fact made prior to October 31, 1920, it becomes unnecessary to determine, since the parties have stipulated that these were withdrawals in 1920 and the evidence is insufficient to make a determination otherwise, but we are unwilling to say that there was a distribution in excess of the indebtedness of which the petitioners were relieved.
Next, to what extent were the petitioners taxable on the withdrawals or distribution of $367,553? Since the stock had been reduced prior to October 31, 1920, when the withdrawals are stipulated to have been made, we are of the opinion that this was not in effect a dividend in liquidation, but was rather a distribution made out of capital or surplus then held by the corporation. Whether the entire $450,000 of capital stock represents capital paid in, the record does not show other than that the capital stock of $150,000 which was outstanding in 1911 was increased in that year to $450,000 and that the individual accounts of the petitioners would indicate that this'increase was made up in part at least of stock dividends. But under any circumstances, the capital or surplus which the corporation had on March 1, 1913, would be exempt from tax when distributed to the petitioners in 1920, and it would only be the earnings or accretions accumulated since March 1, 1913, that would be subject to tax when distributed. Our problem then is to determine how much of the distribution of $367,553 represents capital or surplus existing on March 1,1913, and how much represents profits accumulated since that time. No evidence was furnished as to the capital or surplus on March 1, 1913, other than the reports of the revenue agent, which show that in his determination he used balance sheets which reflected a capital and surplus at December 31, 1912, of $561,887.59, and the individual accounts of the petitioner, which show that dividends totaling $22,500 were credited to them on February 6, 1913. We also have the March 1, 1913, value of the stock of the corporation, but this would not aid in determining the profits which had accumulated from March 1, 1913, to October 31, 1920. From the same reports there is shown capital and surplus at December 31, 1920, of $649,-395.61 before adjustment for the transaction which occurred on *1312 October 31, 1920. No information is available as to the result of operations from December 31, 1912, to March 1, 1913, or from October 31, 1920, to December 31, 1920. From the above facts, however, it would appear that there was an increase in surplus from December 31, 1912, to December 31, 1920, of $87,508.02, which, if it could be accepted as the profits which were accumulated from March 1, 1913, to October 31, 1920, would be the portion of the distribution of $367,553 made on October 31, 1920, which would be taxable as a distribution of profits on that date. The evidence, however, is insufficient to show that the foregoing amount represents a correct determination for the period in question. In the determination made by the respondent, the amount which was determined to be taxable was $80,128.38, and since we are satisfied from the evidence that it was not less than this amount, his determination as to the amount will be accepted, although arrived at in a manner contrary to the principles set forth above. The distribution, to this extent, is subject to tax as an ordinary dividend as distinguished from a liquidating dividend which appears to be the manner in which it was treated by the respondent, though erroneously referred to as a liquidating dividend.
With respect to 1922, when a distribution of $106,500 was made, the parties have stipulated that $30,000 represented a cash dividend in 1922 from profits and that the remaining amount of $76,500 was either a liquidating dividend or a distribution of profits, as the Board may determine. The petitioners stated in their briefs that “It is not particularly material * * * whether or not the 1922 distribution be treated as taxable to the extent claimed by the respondent.” The respondent determined that the petitioners were taxable on dividends to the extent of $49,475.12, out of the total of $106,500, or $19,475.12, in addition to the $30,000 Avhich the parties have stipulated represented a cash dividend. We are satisfied from the evidence that there was a distribution from profits of at least the amount so considered by the respondent and, accordingly, his action with respect to the dividend distribution in 1922 is affirmed.
The testimony of Mr. Knell to the effect that the preferred stock of the All Steel Equipment Co. was the personal property of his wife was further supported by the fact that Mrs. Knell reported the income from such stock during the years involved. The mere fact that the stock was held in the name of John Knell does not constitute sufficient grounds for rebutting this testimony.

Judgment will' be entered wider Rule 50.